UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                        **REPORT, RECOMMENDATION
AND ORDER**

v.

                                                   12-CR-00103-WMS-JJM

KENNETH PETTWAY, JR., et al.,

                          Defendants.

_____

Defendants are charged in 38-count Fourth Superseding Indictment [139][1] with racketeering, in violation of 18 U.S.C. §1962(c) and related charges, arising from the activities of the Bailey Boys, an alleged "criminal organization whose members and associates engaged in narcotics trafficking, robberies, and violent acts" (id., p. 2, ¶A). This case was referred to me by Hon. Willam M. Skretny for supervision of all pretrial proceedings [12]. Before me are the pretrial motions of defendants Kenneth Pettway [183, 224, 269],[2] Demetrius Black [223, 275], Eddie Allen [186, 229],[3] Raymel Weeden [188], Rayshod Washington [197], Tyrone Brown

---

[1]      Bracketed references are to the CM/ECF docket entries.

[2]      Defendants Pettway's and Black's motion [269 and 275] seek to join in each other's arguments concerning their motion to suppress the fruits of the search warrant for the upper apartment of 23 Roosevelt Street. Pettway and Black had also filed earlier pretrial motions directed at the Indictment [17, 19, 26], which were mooted by the return of the subsequent superseding indictments.

[3]      Defendant Allen's second motion [229] does not seek any independent relief, but rather joins in the motions filed by defendants Pettway [224] and Tyrone Brown [225].

[202, 225, 270],[4] Tariq Brown [184, 203, 228],[5] Derrick Ramos [152], and Montell Jones [204].[6]

Oral argument was held on October 2, 2013 [219] and March 5, 2014 [256].

For the following reasons, defendants' non-dispositive motions are granted in part and denied in part, and I further recommend that defendants' dispositive motions be granted in part and denied in part, and reserve decision on those suppression motions requiring evidentiary hearings.

## FACTUAL BACKGROUND

The Fourth Superseding Indictment [139] centers on the activities of the Bailey Boys, an alleged criminal enterprise, as defined by 18 U.S.C. §1961(4), whose purposes were to "control all criminal activity in an area of the City of Buffalo", "make money by both distributing controlled substances and committing robberies of non-gang members found in or near the gang's territory", and "protect the gang's territory and its reputation by committing acts of violence, including murder, against non-members of the Bailey Boys Enterprise" (id., pp. 2-3, ¶¶A-B).[7] The Fourth Superseding Indictment identifies twelve alleged racketeering acts, involving the alleged distribution of controlled substances, murders, attempted murders, and

---

[4]     Defendant Tyrone Brown withdrew his motions ([225], ¶¶77-79) to suppress DNA evidence, the consent search of his apartment, and his statements. See Musitano Affirmation [270], ¶¶4-7.

[5]     Defendant Tariq Brown has not filed any independent motions. His motions [184, 203, 228] seek to join in the motions of his co-defendants.

[6]     Defendant Quinton Thompson also filed pretrial motions [185]. However, since he was recently appointed new counsel [361], he has been provided with an opportunity to supplement his pretrial motions, which will be addressed in a separate decision when the briefing is complete.

[7]     Defendants Ramos' and Weeden's motions to suppress ([152], ¶¶43-46; [248]) have been addressed by separate Reports and Recommendations. My Report and Recommendation on defendant Ramos' motion to suppress [230] was set aside [288], and my Report and Recommendation on defendant Weeden's motion to suppress [349] remains pending on objections.

robberies. Many of the alleged racketeering acts are also charged as substantive counts. *See* Counts 6, 8, 11, 14, 17, 20, 27, 29, 34, 37.

Defendants Pettway, Tyrone and Tariq Brown, Allen, and Washington, the alleged members and associates of the Bailey Boys Enterprise, are charged with racketeering, in violation of 18 U.S.C. §1962(c) (id., Count 1) and with racketeering conspiracy, in violation of 18 U.S.C. §1962(d) (id., Count 2).  The Fourth Superseding Indictment also alleges the following violent crimes in aid of racketeering ("VICAR"):

- -   The December 30, 2010 assault and attempted murder of Victims 1 and 2.  As a result of this conduct, defendant Ramos is charged with two counts of VICAR, in violation of 18 U.S.C. §§1959(a)(3) and 2 (id., Count 3) and §§1959(a)(5) and 2 (id., Count 4), and with using a firearm during these crimes, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and 2 (id, Count 6).

- -   The January 19 and June 14, 2011 murders of Harold McCain and Kevin Wilkins.  As a result of these murders, defendant Tryone Brown is charged with two counts of VICAR, in violation of 18 U.S.C. §1959(a)(1) (id., Count 6) and §§1959(a)(1) and 2 (id., Count 8),  and with using a firearm during these crimes, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and 924(j) (id., Counts 7 and 9).

- -   The June 28, 2011  assault and attempted murder of Victim 3.  As a result of this conduct, defendants Tyrone and Tariq Brown and Jones are charged with two counts of VICAR, in violation of 18 U.S.C. §§1959(a)(3) and 2 (id., Counts 10) and §§1959(a)(5) and 2 (id., Count 11), and with using a firearm during these crimes, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and 2 (id., Count 12).

- - The July 9, 2011 assault and attempted murder of Victims 4, 5 and 6.  As a result of this conduct, defendant Allen is charged with two counts of VICAR, in violation of 18 U.S.C. §§1959(a)(3) and 2 (id., Count 13) and §§1959(a)(5) and 2 (id., Count 14), and with using a firearm during these crimes, in violation of 18 U.S.C. §924(c)(1)(A)(iii) (id., Count 15).

- - The July 23 and 29, 2011 assaults and attempted murders of Victims 7 and 8.  As a result of this conduct, defendant Tariq Brown is charged with four counts of VICAR, in violation of 18 U.S.C. §1959(a)(6) (id., Count 16), §1959(a)(5) (id., Count 17), §1959(a)(3) (id., Count 19) and §1959(a)(5) (id., Count 20), and with using a firearm during these crimes, in violation of §924(c)(1)(A)(iii) (id., Counts 18, 21).

- - The October 24, 2011 assault and attempted murder of Victim 9.  As a result of this conduct, defendant Thompson is charged with  two counts of VICAR, in violation of 18 U.S.C. §§1959(a)(3) and 2 (id., Count 22) and §§1959(a)(5) and 2 (id., Count 23), and with using a firearm during these crimes, in violation of 18 U.S.C. §924(c)(1)(A)(iii) (id., Count 24).

- - The November 19, 2011 assault of Victim 10.  As a result of this conduct, defendants Tyrone Brown and Allen are charged with one count of VICAR, in violation of 18 U.S.C. §§1959(a)(3) and 2 (id., Count 25), and with using a firearm during this crime, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and 2 (id., Count 26).

- - The February 9, 2012 murder of Fred Rozier.  As a result of this murder, defendants Weeden and Washington are charged with one count of VICAR , in violation of 18 U.S.C. §§1959(a)(1) and 2 (id., Count 32), and with using a firearm during this crime, in violation of 18 U.S.C. §§924(c)(1)(A)(iii), 924(j) and  2 (id., Count 33).

- -      The May 12, 2012 murder of Marquay Lee.  As a result of this murder, defendant

Tariq Brown is charged with one count of VICAR, in violation of 18 U.S.C. §§1959(a)(1) and 2

(id., Count 34), and with using a firearm during this crime, in violation of 18 U.S.C.

§§924(c)(1)(A)(iii), §§924(j) and  2 (id., Count 35).

- -      The May 12, 2012 assault and attempted murders of Victims 12, 13, 14, 15.  As a

result of this conduct, Tariq Brown is charged is charged with two counts of VICAR, in violation

of 18 U.S.C. §§1959(a)(3) and 2 (id., Counts 36) §§ 1959(a)(5) and 2 (id., Count  37), and with

using a firearm during these crimes, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and  2 (id.,

Count 38).

The Fourth Superseding Indictment also charges that defendants Pettway, Black

and Tyrone Brown conspired to possess 280 grams or more of a mixture and substance containing

cocaine base with intent to distribute  "[b]eginning sometime in 2010, and continuing sometime

into late 2011", in violation of 21 U.S.C. §846 (id., Count 27). Defendants Pettway and Black are

also charged with possession of firearms in furtherance of that  alleged conspiracy, in violation of

18 U.S.C. §§924(c)(1) and (2) (id., Count 28).  Additionally defendants Pettway and Black are

charged with possession of heroin and cocaine with intent to distribute on or about January 18,

2012, in violation of 21 U.S.C. §§841(a)(1) and 18 U.S.C. §2 (id., Count 29), and with possessing

firearms in furtherance of that drug trafficking offense, in violation of 18 U.S.C §§924(c)(1) and 2

(id., Count 30).  Defendant Pettway is also charged with possession of firearms and ammunition

on January 18, 2012,  as a convicted felon, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2) (id., Court 31).[8]

## PROCEDURAL BACKGROUND

The motion practice in this case was originally intended to be bifurcated, with discovery motions followed by all other motions.  The parties initially filed discovery motions (Amended Scheduling Order on the Fourth Superseding Indictment [175]), and oral argument of those motions was held on October 2, 2013 at which time some of defendants' discovery motions were resolved.  *See* October 2, 2013 Text Order [219].  At that proceeding, I also set a deadline for defendants to "file *any additional pretrial motions*, including requests for suppression and for bills of particulars, and supplement their earlier requests for FD-302 reports" (October 2, 2013 Text Order [219] (emphasis added)), which triggered some defendants to file additional discovery motions. *See e.g.*, Greenman Declaration [224],   Oral argument of those motions was held on March 5, 2014,  and at that time I permitted:

- -      The government to respond "to that aspect of Pettway's motion seeking suppression of his statements as a result of his allegedly illegal arrest (Greenman Declaration 224, paragraph 23), including an explanation as to why a timely response to that aspect of Pettway's motion was not filed".  March 5, 2014 Text Order [256];

- -      Defendant Tyrone Brown to supplement his pretrial motions based upon the production of additional materials (id.);  and

---

[8]      The Fourth Superseding Indictment [139] also contains notice of special findings against defendants Tryone and Tariq Brown.  However, the government has advised that it will not seek the death penalty against these defendants [179, 205].

- -     Defendants to "submit any additional authority supporting their entitlement to immediate disclosure of Jencks Act material and FBI 302s" (id).

As permitted, defendant Tyrone Brown supplemented his pretrial motions [270] and I set a briefing schedule [273] permitting the government to respond to these supplemental motions, but no response was filed.  Nor did the government respond to defendant Pettway's motion to suppress his statements as a result of his allegedly illegal arrest as I permitted in my March 5, 2014 Text Order [256].  As set forth below, the government also failed to respond to other portions of defendants' pretrial motions.

## ANALYSIS

**A.     Motions to Dismiss Counts 1 and 2 for Facial Insufficiency**

Defendants Pettway and Tyrone Brown move to dismiss Counts 1 and 2 of the Fourth Superseding Indictment as being facially deficient.  Greenman Declaration [224], ¶¶149-51; Musitano Affirmation [225], ¶¶14-34.[9]  In response, the government generally argues that these motions "depend on facts (or better, a lack of facts) and are thus premature" and that "even a conclusory examination of Counts 1 and 2 should demonstrate to the Court that each [of the necessary] elements are plead, and indeed pled in some detail".   Government's Consolidated Response [246], pp. 15-18.

"Review of a criminal RICO indictment  is governed by Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which only requires that the indictment be a plain, concise and

---

[9]     If Count 1 fails to allege a substantive RICO offense, defendant Brown argues that "all counts connected to Count 1 . . . must be dismissed".  Musitano Affirmation [225], ¶34.

definite written statement of the essential facts constituting the offense charged." United States v. Fruchter, 104 F.Supp.2d 289, 296 (S.D.N.Y. 2000).  "This requirement performs three constitutionally required functions: It fulfills the Sixth Amendment right to be informed of the nature and cause of the accusation; it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).  "The validity of an indictment is tested by its allegations, not by whether the government can prove its case." United States v. Dupree, 2011 WL 3235763, *3  (E.D.N.Y. 2011).

### 1.     Count 1:  RICO

Count 1 charges defendants with a substantive RICO offense, in violation of 18 U.S.C. §1962(c), which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity".   Defendants Pettway and Tyrone Brown challenge whether the Fourth Superseding Indictment sufficiently pleads the elements of an "enterprise" and "pattern of racketeering activity".

### a.     Enterprise

An "enterprise" is defined to include  "any . . . group of individuals associated in fact although not a legal entity". 18 U.S.C. §1961(4).  "RICO reaches  a group of persons

associated together for a common purpose of engaging in a course of conduct" and "[s]uch an

enterprise . . .  is proved by evidence of an ongoing organization, formal or informal, and by

evidence that the various  associates function as a continuing unit." <u>Boyle v. United States</u>, 556

U.S. 938, 944-45 (2009).

> "[A]n association-in-fact enterprise must have at least three
> structural features: a purpose, relationships among those associated
> with the enterprise, and longevity sufficient to permit these
> associates to pursue the enterprise's purpose . . . . [A]n
> association-in-fact enterprise is simply a continuing unit that
> functions with a common purpose. Such a group need not have a
> hierarchical structure or a 'chain of command'; decisions may be
> made on an ad hoc basis and by any number of methods    by
> majority vote, consensus, a show of strength, etc. Members of the
> group need not have fixed roles; different members may perform
> different roles at different times. The group need not have a name,
> regular meetings, dues, established rules and regulations,
> disciplinary procedures, or induction or initiation ceremonies.
> While the group must function as a continuing unit and remain in
> existence long enough to pursue a course of conduct, nothing in
> RICO exempts an enterprise whose associates engage in spurts of
> activity punctuated by periods of quiescence. Nor is the statute
> limited to groups whose crimes are sophisticated, diverse, complex,
> or unique; for example, a group that does nothing but engage in
> extortion through old-fashioned, unsophisticated, and brutal means
> may fall squarely within the statute's reach." <u>Id</u>. at 946, 948.

Thus, [a]ny failure to specify each Defendant's particular role or title in the criminal association is

not fatal to the sufficiency of the enterprise allegations, for <u>Boyle</u> made clear that it is not

necessary for an enterprise to have a clearly defined hierarchy, chain of command, or fixed roles

of the participants." <u>United States v. Larson</u>, 2011 WL 6029985, *7 (W.D.N.Y. 2011) (Skretny,

J.).

Defendant Tyrone Brown argues that the Fourth Superseding Indictment fails to

plead, with necessary factual sufficiency, the existence of a criminal enterprise. Musitano

Affirmation [225], ¶¶18-29. "[T]he existence of an enterprise must be alleged in the indictment with sufficient factual detail to apprise the defendant of the general nature of the alleged enterprise. Proving an enterprise at trial is another matter; this requires proof of, among other things, an association of individuals for a common purpose and an organizational structure . . . . The indictment need not, however, address each constituent aspect of an enterprise that must be proven as if it were a discrete element of the offense; the elements (loosely speaking) of an enterprise are not elements of RICO". United States v. Weaver, 2010 WL 1633319, *2 (S.D.W.Va. 2010). *See also* United States v. Eldridge, 2013 WL 6096520, *2 (W.D.N.Y. 2013) ("Contrary to defendant . . . the Government has sufficiently alleged a relationship among defendants and a time period sufficient to meet the longevity requirement. The indictment contains enough factual detail to appraise defendants of the general nature of the alleged enterprise, and any additional specifics about how the enterprise operated are evidentiary matters to be proven at trial. Such details do not have to be specifically set forth in the indictment"); United States v. Rastelli, 653 F.Supp. 1034, 1047 (E.D.N.Y. 1986) ("since the RICO charge in the present case on its face alleges an association-in-fact functioning as a continuing unit with an ascertainable structure, this Court cannot now dismiss the count. Of course, if the Government cannot prove the existence or organization of the enterprise as described in its proffer, dismissal of the RICO count at a later date will be required").

The Fourth Superseding Indictment [139] sufficiently alleges the existence of an "enterprise" by alleging that the named defendants:

> "were members were members and associates of the Bailey Boys, a criminal organization whose members and associates engaged in narcotics trafficking, robberies and violent acts, including acts involving murder. The Bailey Boys, including its leadership,

members and associates, constituted an enterprise as that term is defined [18 U.S.C. §1961(4)]; namely a group of individuals associated in fact for which the members and associates of the enterprise variously referred to themselves by, among other names, 'the Bailey Boys,' 'Bailey and Minnesota,' and 'Six-Deuce,' and which are hereinafter referred to as 'the Bailey Boys Enterprise.' The Bailey Boys Enterprise, which was and is a violent street gang, constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise".  (id., p. 2, ¶A).

In addition to this description of the enterprise, the Fourth Superseding Indictment identifies the purposes and the means and methods of the enterprise (id., pp. 3-4, ¶¶B, C).

Many of defendant Tyrone Brown's arguments appear to be directed at the elements of an enterprise.   First, he argues that there is "no enterprise pled in the indictment that was separate and distinct from the defendants".  Musitano Affirmation [225], ¶21.  However, "[t]he indictment does not allege that the individuals are the enterprise.  Instead, it alleges that they are a 'group of individuals associated in fact'".  Eldridge, 2013 WL 6096520 at *3. See Fourth Superseding Indictment [139], p. 2, ¶A.  He also argues that the enterprise pled is not an entity separate and apart from the alleged pattern of racketeering activity.  Musitano Affirmation [225], ¶28.  This argument is likewise unavailing.  See United States v. Triumph Capital Group, Inc., 260 F.Supp.2d 444, 454-55 (D.Conn. 2002) (concluding that "the defendants confuse the requirements for pleading a RICO violation with the requirements for proving a RICO violation", where they argued that "a properly alleged association-in-fact enterprise must include facts showing that it is an entity separate and apart from the pattern of  racketeering activity in which it engages").  See also Boyle, 556 U.S. at 951 ("proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise"); United States v. Hutchinson, 573 F.3d 1011, 1021 (10th Cir.), cert. denied, 558 U.S.

1036 (2009) ("after Boyle, an association-in-fact enterprise need have no formal hierarchy or means for decision-making, and no purpose or economic significance beyond or independent of the group's pattern of racketeering activity"); United States v. Mazzei,  700 F.2d 85, 89 (2d Cir.), cert. denied, 461 U.S. 945 (1983) ("proof of these separate elements [need not] be distinct and independent, as long as the proof offered is sufficient to satisfy both elements").

Further, defendant Tryone Brown argues that the Fourth Superseding Indictment fails to allege that the enterprise had longevity, as there "is clearly no starting and ending years to this enterprise". Musitano Affirmation [225], ¶26. Longevity requires that an "enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity'" Boyle, 556 U.S. at 946. Count 1 satisfies this requirement by alleging that "[b]eginning sometime in 2004 . . . and continuing thereafter to the date of the return of this Fourth Superseding Indictment", the named defendants "being persons employed by and associated with the Bailey Boys Enterprise . . . did unlawfully . . . participate . . . in the conduct of the affairs of the enterprise through a pattern of racketeering activity". Fourth Superseding Indictment [139], p. 5, ¶D.

Lastly, defendant Tyrone Brown argues that from the "government's discovery material", there was "no relationship among associates, or interpersonal relationships" as required by Boyle. Musitano Affirmation [225], ¶27. However, since generally "[t]here is no such thing as a motion for summary judgment in a criminal case", United States v. Parker, 165 F.Supp.2d 431, 458 (W.D.N.Y. 2001), this is a  factual issue that must be resolved by the jury. See United States v. Elson,  968 F.Supp. 900, 905 (S.D.N.Y. 1997) ("The defendant . . . disputes whether the Government will be able to show a legally sufficient 'enterprise' or a 'pattern of racketeering

activity.'  However, it is well established that an Indictment that is valid on its face may not be

dismissed on the ground that it is based on inadequate or insufficient evidence").


### b.        Pattern of Racketeering

To satisfy the "pattern of racketeering  activity" requirement, the RICO statute

"requires at least two acts of racketeering activity . . . the last of which occurred within ten

years (excluding any period of imprisonment) after the commission of a prior act of racketeering

activity". 18 U.S.C. §1961(5).  Additionally ,"to prove a pattern of racketeering activity a . . .

prosecutor must show that the racketeering predicates are related, and that they amount to or pose

a threat of continued criminal activity".  H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S.

229, 239 (1989).  "The requirements of relatedness and continuity protect defendants from RICO

charges based on isolated or sporadic criminal acts."  United States v. Burden, 600 F.3d 204, 216

(2d Cir.), cert. denied, ___U.S.___ 131 S.Ct. 251 (2010).

"Relatedness requires that "predicate acts must be related to each other

('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)".

United States v. Daidone, 471 F.3d 371, 375 (2d Cir. 2006). "Relatedness may be established by

showing that the predicate acts have 'the same or similar purposes, results, participants, victims,

or methods of commission.'" United States v. Diaz,  176 F.3d 52, 93 (2d Cir.), cert. denied, 528

U.S. 875 (1999) (quoting H.J. Inc., 492 U.S. at 240).

"As to the continuity component of the RICO pattern element . . . while continuity

and relatedness are concepts that are analytically separate, proof of the two 'will often overlap.'"

United States. v. Eppolito, 543 F.3d 25, 51 (2d Cir. 2008) (quoting H.J., Inc., 492 U.S. at 239).

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement". Id. at 242.  Alternatively, "[t]he threat of continuity is sufficiently established where  the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes". Id. at 242-43.  *See* United States v. Pizzonia, 577 F.3d 455, 465 (2d Cir. 2009), cert. denied, 558 U.S. 1115 (2010).

Defendants Pettway and Tyrone Brown argue that both elements are missing from the Fourth Superseding Indictment.  Greenman Declaration [224], ¶¶149-151; Musitano Affirmation [225], ¶¶30-33.  However, the government is not required to expressly plead relatedness and continuity, which are not elements of a RICO offense.  *See* United States v. Gotti, 399 F.Supp.2d 214, 224 (S.D.N.Y. 2005) ("The present indictment alleges that Racketeering Act Six is part of a 'pattern of racketeering activity' as defined by the RICO Act.  Racketeering Act Six is, therefore, sufficient on its face"); United States v. Urso, 369 F.Supp.2d 254, 260 (E.D.N.Y. 2005) (where the defendant argued that alleged racketeering acts were not meaningfully related so as to constitute a pattern of racketeering activity, the court concluded that this argument was a "direct challenge[ ]  to the sufficiency of the government's proof, and therefore are premature"); United States v. Boylan,  898 F.2d 230, 250 (1st Cir.), cert. denied, 498 U.S. 849 (1990) ("continuity is not an element of a RICO offense, *stricto senso*, but it is nevertheless a necessary characteristic of the evidence used to prove the existence of a pattern"); United States v. Palumbo

-14-

Bros., Inc., 145 F.3d 850, 877-78 (7th Cir.), cert. denied, 525 U.S. 949 (1998) (same); United States v. Dote, 150 F.Supp.2d 935, 940 (N.D.Ill. 2001) ("'Continuity' is not an element of a RICO violation, and need not be plead with particularity to survive a motion to dismiss . . . . Rather, . . . continuity . . . [is] 'a necessary characteristic of the evidence used to prove the existence of a pattern'"); United States v. Boidi, 2006 WL 456004, *2 (D.Mass. 2006) ('Relatedness' and 'continuity' are not elements of the offense, but rather means of proving a pattern of racketeering"). Nonetheless, some courts have held that "a RICO indictment must allege facts sufficient to show that predicate acts are related and pose a threat of continued criminal activity". United States v. Ortiz, 2013 WL 6842541, *3 (N.D.Cal. 2013). See United States v. Garcia, 2012 WL 6623984, *5 (D.Idaho 2012) ("[T]he government does not need to allege continuity and relatedness as separate elements. Nonetheless, a RICO indictment must allege facts sufficient to show that predicate acts are related and pose a threat of continued criminal activity").

The RICO Count of the Fourth Superseding Indictment satisfies this requirement. Concerning relatedness, "both the vertical and horizontal relationships are generally satisfied by linking each predicate act to the enterprise. This is because predicate crimes will share common goals . . . and common victims . . . , and will draw their participants from the same pool of associates". Daidone, 471 F.3d at 376. See United States v. Minicone, 960 F.2d 1099, 1106 (2d Cir.), cert. denied, 503 U.S. 950 (1992) ("Two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise"). Here, the Fourth Superseding Indictment [139] alleges that the purposes of the enterprise were to "control all criminal activity" in a certain section of the City of Buffalo and to make money by drug distribution and robberies, and that it sought to protect its territory and reputation by committing

acts of violence (id., p. 3, ¶B).  It also alleges that the defendants participated "directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity" consisting of twelve racketeering acts that overlap with the purposes of the enterprise.  Therefore, I conclude that the alleged racketeering activities are sufficiently related to the purposes of the enterprise to satisfy the relatedness requirement.

The Fourth Superseding Indictment [139] likewise sufficiently pleads continuity by  alleging that a series of related predicate acts extending over approximately two years.  *See* Triumph Capital Group, Inc., 260 F.Supp.2d at 453 ("[T]he totality of the factual allegations of racketeering activity by all the members of the alleged association-in-fact enterprise over a substantial period of time are sufficient to reasonably substantiate the existence of closed-ended or open-ended continuity").

Therefore, I recommend the defendant Pettway's and Tyrone Brown's motions to dismiss Count 1 of the Fourth Superseding Indictment for facial insufficiency be denied.

2.      **Count 2: Rico Conspiracy**

Count 2 of the Fourth Superseding Indictment [139], which incorporates the allegations of the introductory paragraphs of the Fourth Superseding Indictment describing the enterprise, its purposes, and its means and methods, alleges that the named defendants "conspired to violate [18 U.S.C. §1962(c)], that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise though a pattern of racketeering activity" consisting of Racketeering Acts One through Twelve of Count 1 (id., pp. 18-19, ¶D).  It is also

alleges that each named  "defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise" (id., p. 19, ¶E).

Defendant Pettway argues that "[a] RICO conspiracy is defined as an agreement to conduct or participate in the conduct of a charged enterprise's affairs through a pattern of racketeering", yet "[t]hose elements were not set out under the first count of the indictment". Greenman Declaration [224], ¶149.[10]  He also argues that "the allegations in the conspiracy and the overt acts as pled only show sporadic and isolated acts not related to each other or to the alleged enterprise" which "is insufficient to establish the elements of the crime . . . because, to be convicted of RICO conspiracy . . . a conspirator must intend to further the endeavor which if completed would satisfy all of the elements of the substantive crime" (id., ¶151).

"When read in conjunction with the language of §1962(c), RICO's conspiracy provision [§1962(d)]  proscribes an agreement to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." United States v. Praddy, 725 F.3d 147, 155 (2d Cir. 2013).  "[F]or purposes of establishing a RICO conspiracy, the government is required to prove only the existence of an agreement to violate RICO's substantive provisions. Thus, the government necessarily has to establish that [the defendant] agreed with his criminal associates to form the RICO enterprise".  United States v. Applins, 637 F.3d 59, 74  75 (2d Cir.), cert. denied, __ U.S.___132 S.Ct. 434 (2011). See United States v. Cain, 671 F.3d 271, 291 (2d Cir. 2012), cert. denied, __ U.S.__, 132 S.Ct. 1872 (2012) ("A conspiracy conviction under Section 1962(d) requires proof, inter alia, that a defendant agreed

---

[10]     Although Pettway is referencing a RICO conspiracy, he cites to Count 1, the substantive RICO count.

with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering"). "In order to establish the pattern element of the conspiracy, the government must prove that the defendant agreed that at least two predicate acts would be committed by some member of the conspiracy as part of the conduct of the enterprise." United States v. Mayes, 2014 WL 25569, *5 (E.D.N.Y. 2014). "[F]urther . . . to be convicted as a conspirator under RICO, one must be shown to have possessed knowledge of only the general contours of the conspiracy." Applins, 637 F.3d at 75.

        In Larson, Judge Skretny concluded that an indictment adequately alleged the elements of a RICO conspiracy where it alleged that "the charged Defendants 'unlawfully and knowingly combined, conspired, confederated and agreed, together, with each other, and with others, to violate the provisions of . . . Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the . . . Criminal Enterprise through a pattern of racketeering activity,' and that '[i]t was a part of the conspiracy that during the aforesaid period, [Defendants], together and with others, agreed that a conspirator employed by or associated with the . . . Criminal Enterprise would commit at least two acts of racketeering activity in the conduct of the affairs of . . . Criminal Enterprise.'" 2011 WL 6029985 at *5. Although defendants may challenge the government's evidence at trial, Count 2 of the Fourth Superseding Indictment, which is pled similarly to the indictment in Larson, sufficiently alleges a RICO conspiracy.[11]

---

[11]     Defendant Pettway makes other challenges to the sufficiency of the RICO conspiracy count (Greenman Declaration [224], ¶¶149-51), which overlap with his arguments directed at the substantive RICO count. I have already addressed those arguments.

Therefore, I recommend that defendant Pettway's motion to dismiss Count 2 for facial insufficiency be denied.


**B.      Motion to Dismiss Counts 1 and 2 as being Void for Vagueness**

Defendant Pettway argues that "the first two counts of the indictment must be dismissed both because the statutes and the indictment are void for vagueness and, as well, are unconstitutionally void for vagueness as applied to [him]".  Greenman Declaration [224], ¶144. While the government responds generally to defendants' motion to dismiss Counts 1 and 2 of the Fourth Superseding Indictment  for failure to state an offense, it does not respond to defendant Pettway's argument that these counts are also void for vagueness. These are different  arguments. *See, e.g.*, United States v. Kernan,  2009 WL 606146, *2 (N.D.N.Y. 2009) (addressing sufficiency and vagueness as separate issues).

"Where a partial response to a motion is made - *i.e.*, referencing some claims or defenses but not others . . . .  in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." Jackson v. Federal Express, 766 F.3d 189, 197-98 (2d Cir. 2014); United States Securities and Exchange Commission v. Syron, 934 F. Supp.2d 609, 631 (S.D.N.Y. 2013) ("a plaintiff who does not respond to a point raised by a defendant on a motion to dismiss concedes that point through silence").

While Jackson and Syron were decided in the civil context, I see no valid reason to apply a different rule in a criminal case, where the defendant's liberty is at stake. However, I recognize that some courts take a different view. For example, in United States v. Florack 155

F.R.D. 49, 56 (W.D.N.Y. 1994), Judge Larimer concluded that the government's failure to respond to defendant's argument "do[es] not relieve this court of the performance of the judicial function" of "determining the legal sufficiency of a motion on the facts alleged by the movant".

I respectfully disagree. "The nature of the judicial function in our adversarial system is to weigh *competing* arguments in light of the relevant facts and applicable law and . . . to decide which side wins and which side loses." Stephens v. Herring, 827 F.Supp. 359, 365-66 (E.D.Va. 1993) (emphasis added). Since the government has failed to respond to defendant Pettway's argument that Counts 1 and 2 of the Indictment are void for vagueness, as to this issue there are no "competing arguments" for me to weigh. *See* United States v. Persico, 832 F.2d 705, 714 n. 2 (2d Cir. 1987), cert. denied, 486 U.S. 1022 (1988) ("the government did not present this argument to the district court, nor was Russo allowed the opportunity to defend against it . . . . Therefore, we deem the issue to be waived").[12] Accordingly, I recommend that this portion of the motion be granted.

However, in the event that this recommendation is not adopted, the following is my analysis of defendant Pettway's argument. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). "The root of the vagueness doctrine is a rough idea of fairness. It is not a principle

---

[12]     *See also* Vertex, Inc. v. City of Waterbury, 898 A.2d 178, 185 (Conn. 2006) ("due to the adversarial nature of our judicial system, 'the court's function is generally limited to adjudicating the issues *raised by the parties* . . .'.") (emphasis in original, *quoting* F. James, G. Hazard & J. Leubsdorf, Civil Procedure (5th Ed. 2001) §1.2, p. 4)).

designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." Colten v. Kentucky, 407 U.S. 104, 110 (1972).

"'Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.'" United States v. Coppola, 671 F.3d 220, 235 (2d Cir.2012), cert. denied, ___ U.S.__, 133 S.Ct. 843 (2013) (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)). United States v. Farhane, 634 F.3d 127, 138 (2d Cir.), cert. denied, __ U.S. __ (2011) ("In the absence of First Amendment concerns, courts generally view vagueness challenges to a statute as applied to the defendant's case"); United States v. Coiro, 922 F.2d 1008, 1017 (2d Cir.), cert. denied, 501 U.S. 1217 (1991) ("In the absence of first amendment considerations, vagueness challenges must be considered in light of the facts of the particular case").

"When the challenge is vagueness 'as-applied', there is a two-part test: a court must first determine whether the statute  gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and then consider whether the law provides explicit standards for those who apply it." United States v. Nadi,  996 F.2d 548, 550 (2d Cir.), cert. denied, 510 U.S. 933 (1993). "In an as-applied challenge, 'one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness.'" United States v. Nadirashvili, 655 F.3d 114, 122 (2d Cir. 2011).

The Second Circuit "has consistently rejected such challenges to the RICO statute". United States v. Burden, 600 F.3d 204, 228 (2d Cir.), cert. denied, __ U.S.___, 131

S.Ct. 251(2010).  The Second Circuit has also rejected vagueness challenges to the  RICO

conspiracy statute.  *See* <u>United States  v. Clemente</u>,  640 F.2d 1069, 1081 (2d Cir.), <u>cert. denied</u>,

454 U.S. 820 (1981). Defendant Pettway points to no authority (from the Second Circuit or

elsewhere) holding otherwise.  Nor does he demonstrate why the charge here is

unconstitutionally vague as applied to him.

       Instead, relying on several recent Second Circuit decisions, including <u>Applins</u>,

Pettway argues that he is "expected to stand trial for a serious crime when the government is not

obliged to prove that an enterprise existed nor must the government prove any pattern acts of

racketeering with regard to the RICO conspiracy charge . . . .  In order to be convicted, the

government must <u>only</u> prove that [he] had possessed knowledge of only the general contour of

the conspiracy and that [he] <u>only</u> knew of and agreed to the general criminal objective of a jointly

undertaken scheme".  Greenman Declaration [224], ¶147 (emphasis in original).

       Pettway understates the proof required to establish a RICO conspiracy.  I agree

that "proof of a RICO conspiracy does not require the government to prove the actual existence

of the elements of the substantive offense    such as an enterprise and a pattern of racketeering

activity".  <u>Mayes</u>, 2014 WL 25569 at *6.  I also agree that to be convicted of a RICO conspiracy,

"one must be shown to have possessed knowledge of only the general contours of the

conspiracy." <u>Applins</u>,  637 F.3d  at 75.[13]  Nonetheless, Pettway ignores the fact that the

government is also required to prove "the existence of an agreement to violate RICO's

---

[13]    According to the government, to establish a RICO conspiracy, it must prove the
following elements: "The existence of an enterprise [or that an enterprise would exist]; That the
enterprise was [or would be] engaged in, or its activities affected [or would affect], interstate or foreign
commerce; and That each defendant knowingly agreed that a conspirator [which may include the
defendant him/herself] would commit a violation of 18 U.S.C. § 1962(c)." Government's Consolidated
Response [246], p. 17.

substantive provisions. Thus, the government necessarily has to establish that the defendant

agreed with his criminal associates to form the RICO enterprise". Applins, 637 F.3d at 74-75.

See Mayes, 2014 WL 25569 at *6 (To establish a RICO conspiracy "the government must

establish that the defendant agreed to participate in an undertaking that, if accomplished, would

satisfy all of those elements").

     Pettway further  argues that "[w]ithout any doubt, a reading of the indictment

clearly indicates that no intelligent individual in [his]  shoes . . . could have any idea of what he is

charged with having done".  Greenman Declaration [224], ¶145.  I disagree.  There is ample

detail alleged  in the Fourth Superseding Indictment so as not to leave defendant Pettway

guessing about what he is charged with having done.  It describes the alleged enterprise, its

participants, the pattern of racketeering activities, defendant Pettway's alleged participation in

certain of the racketeering acts, and the duration of the alleged conspiracy.  See United States v.

D'Amico, 734 F.Supp.2d 321, 332 (S.D.N.Y. 2010) (holding that a RICO conspiracy count was

not unconstitutionally vague where "[i]n addition to satisfying the basic requirements of tracking

the language of the RICO statute and stating the approximate time and place of the alleged

conspiracy, the twelve pages of Count One provide certain details regarding the nature and

structure of the charged enterprise, its purposes, means and methods, and [the defendant's]

position in the Family. The Indictment also lists the state and federal statutory offenses that

allegedly comprise the pattern of racketeering through which [the defendant] and his

co-conspirators agreed to participate in the enterprise's affairs"); United States v. Colbert, 2011

WL 3360112, *3-4 (W.D.Pa. 2011) (rejecting vagueness challenge to RICO conspiracy count

where the count contained "allegations that defendants committed multiple acts of robbery

and murder, narcotics trafficking and obstruction of justice in the conduct of the enterprise's

affairs . . . . [T]his type of activity makes one susceptible to RICO criminal liability. Further, the

RICO statute gives defendants notice that the conduct with which they are charged is illegal").

Therefore, had the government not failed to respond to Pettway's vagueness

argument, I would recommend that the argument be rejected.

**C.    Motion to Dismiss Counts 27 and 28 and the First and Ninth Racketeering Acts**

In Section XV of defendant Pettway's pretrial motion [224], he raises the

following three  arguments in support of dismissal: 1) the First and Ninth Racketeering Acts

"encompass each other" and as a result "under the first count, . . . Pettway has not been shown to

have committed two acts of racketeering and . . . the first count . . . must be dismissed".

Greenman Declaration [224], ¶137;  2) "count 27 is the same charge as contained in the first

racketeering count . . . and, as a result, that count must be dismissed on the basis that the count is

multiplicitous" (id.); and 3) "count 28 charges defendants Pettway and Black with conduct

beginning in sometime in 2010 continuing into late 2011with Knowingly and Unlawfully

Possessing Firearms.  That conduct is duplicitous because it . . . charges two or more distinct

offenses in a single count" (id., ¶138) (emphasis in original).

The government appears to only respond to the second ground for dismissal,

arguing that Count 27 and the First Racketeering Act are not multiplicitous since "Congress did

not intend to preclude separate convictions or consecutive sentences for a RICO offense and the

underlying crimes that make up the pattern of racketeering".  Government's Consolidated

Response [246], p. 15 n. 6.   I agree with the government.

"A multiplicitous indictment, of course, is one that charges in separate counts two or more crimes, when in fact and law, only one crime has been committed ." United States v. Holmes, 44 F.3d 1150, 1154 (2d Cir. 1995).   "[I]t is the pattern of activity, not the predicates, that is punished by a racketeering conviction. For precisely this reason, the law permits a defendant to be prosecuted - either simultaneously or at separate times - for both substantive racketeering and the predicate crimes evidencing the pattern of racketeering." United States v. Basciano, 599 F.3d 184, 205 (2d Cir. 2010). Therefore, I recommend that defendant Pettway's motion to dismiss Count 27 be denied.

However, because the government fails to respond to defendant Pettway's arguments directed at the dismissal of the First and Ninth Racketeering Acts, and at the dismissal of Count 28, I recommend that these motions be granted. *See* Discussion at pp. 19-20, *supra*. However, in case that my recommendation is not adopted, the following is my analysis of defendant Pettway's arguments.

With respect to his first argument, the First Racketeering Act tracks Count 27, charging defendant Pettway and others with a conspiracy from "[b]eginning sometime in 2010, and continuing sometime into late 2011" to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §846.  By contrast, the Ninth Racketeering Act tracks Count 29, charging defendants  Pettway and Black with the substantive offense of  possessing  heroin and cocaine with intent to distribute on or about January 18, 2012, in violation of 21 U.S.C. §§841(a)(1) and 2.  Pettway appears to argue that these racketeering acts are multiplicitous.  However, "[a] conspiracy is not the same crime as the underlying violation that it contemplates." United States v. Ansaldi,  372 F.3d 118, 124 -25 (2d Cir.), cert. denied, 543 U.S. 949 (2004).  Thus, these

-25-

racketeering acts, which address distinct conduct occurring at different times, fail to overlap one another as argued by defendant Pettway.  *See* Greenman Declaration [224], p. 57 n. 2.

I also conclude that there is no merit to defendant Pettway's argument that Count 28 is duplicitous.  "An indictment is duplicitous if it joins two or more distinct crimes in a single count."  United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir.1992).  Count 28 charges that defendants Pettway and Black possessed  firearms from "[b]eginning sometime in 2010, and continuing sometime into late 2011", in furtherance of the  alleged drug conspiracy alleged in Count 27, in violation of 18 U.S.C. §§924(c)(1) and  2.  Pointing to the fact that he is charged with possession of multiple firearms, defendant Pettway argues that this count "charges two or more distinct offenses" . Greenman Declaration [224], ¶138.   However, "the appropriate unit of prosecution [is] the underlying drug-trafficking offense, not the separate firearms".  United States v. Lindsay, 985 F.2d 666, 674 (2d Cir.), cert. denied, 510 U.S. 832 (1993).  Thus, "[w]here the government links multiple firearms to a single crime, only one § 924(c)(1) violation occurs".  Id. *See* United States v. Prisco,  2009 WL 413616, *3 (S.D.N.Y. 2009).

**D.      Motions to Suppress Physical Evidence**

**1.      Sufficiency of the January 9, 2012 Search Warrant**
**For 23 Roosevelt Street, Upper Apartment**

Defendants Pettway and Black move to suppress the evidence seized pursuant to the January 9, 2012 Search Warrant for 23 Roosevelt Street in Buffalo, New York, issued by Erie County Court Judge Kenneth F. Case.  Greenman Declaration [224], Point XI; Hill Declaration [223-1].   At the outset, I conclude that defendants have standing for purposes of this motion to

contest the search of the apartment. Defendant Black has submitted an Affidavit [223-3][14] stating

that at the time of the search, "I had leased this apartment from the owners, who lived in the

lower apartment, for over one year.  I made monthly payments to them . . . . I expected that my

apartment was private" (id., ¶¶2-3).

Defendant Pettway also submits an Affidavit [268-1], stating that on January 17,

2012, he went to the upper apartment of 23 Roosevelt Avenue with defendant Black, the tenant

of that apartment,  and remained there overnight on January 17 into January 18, 2012 with

defendant Black's permission and consent, and planned to remain there though January 19, 2012

(id., ¶¶4-5, 7).  He also states that personal property of his was seized and that he had a

reasonable expectation of privacy in the areas searched and items seized (id., ¶¶8, 10).  His

"status as an overnight guest is alone enough to show that he had an expectation of privacy in the

home that society is prepared to recognize as reasonable".  Minnesota v. Olson,  495 U.S. 91,

96-97 (1990).  See United States v. Snype, 441 F.3d 119, 130 (2d Cir.), cert. denied, 549 U.S.

923 (2006) ("As an overnight guest in Bean's apartment, Snype shared in his host's legitimate

expectation of privacy in the premises"); United States v. Fields, 113 F.3d 313, 320 (2d Cir.),

cert. denied, 522 U.S. 976 (1997) ("society recognizes as legitimate the expectation of privacy

possessed by an overnight guest    even though he has at best a fleeting connection to his host's

home"); United States  v. Hamilton,  538 F.3d 162, 167-68 (2d Cir. 2008) ("A protected privacy

---

[14]        The government argues that no affidavit of standing had been submitted by either
defendant.  Government's Consolidated Response [246], p. 6. While that is incorrect as to defendant
Black [223-3], defendant Pettway did not initially submit an affidavit of standing, but I permitted him to
do so at the March 5, 2014 oral argument.  March 5, 2014 Text Order [256].

interest has been found in a wide array of circumstances, ranging from ownership or regular

occupancy of a home . . . to status as an overnight guest in someone else's home").

       The Search Warrant ([224-1], pp. 2-3 of 6) was based on the Affidavit of Warren

Hawthorn, a Detective with the Erie County Sheriff's Department (id., pp. 4-6 of 6), which stated

in relevant part:

> "2. a)   I have information based upon statements made to me by
> confidential sources.
>
>     1)   The confidential source knows . . . PETTWAY to sell
> cocaine.  The source has purchased cocaine from PETTWAY
> numerous times over the course of the last several months.  The
> source also knows [Pettway] to possess cocaine and sell cocaine
> from 23 Roosevelt Upper apartment.  *Further information to be
> developed during in camera testimony.*
>               . . .
> Based upon the foregoing reliable information and of my personal
> knowledge as aforesaid, there is probable cause to believe that
> cocaine . . . may be found at the . . . premises"  (id., pp. 4-6 of 6)
> (emphasis added).

Consistent with Detective Hawthorn's Affidavit, the header of the Search Warrant states in bold:

"SEARCH WARRANT APPLICATION . . . . . . . *IN CAMERA HEARING HELD*" (id.)

(emphasis added).  However, in contradiction to Detective Hawthorne's Affidavit and the header

of the Search Warrant, the Search Warrant states that it was based solely on "[p]roof, by affidavit

. . . by Detective Hawthorne" (id., p. 2 of 6).

       Notwithstanding the contradictory references in the search warrant, Judge Case

appears to have considered *in camera* testimony, as his notes of that testimony have been

provided to me by that court.[15]  Defendant Pettway argues that "[b]ecause there is no indication

---

[15]    These notes have not been disclosed to the parties.

on the face of the warrant that an *in camera* proceeding had taken place, there is no basis to consider any other information".  Greenman Declaration [224], ¶114.  However, I need not resolve this issue since even without the referenced *in camera* testimony,[16] I agree with the government that Detective Hawthorne's Affidavit was sufficient to establish probable cause for the search warrant.  Government's Consolidated Response [246], p. 7.

In issuing a search warrant,  "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review.  A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'"  Id. at 236.  "'[C]ourts should not invalidate . . . warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner.'"  Id.  "[S]o long as the magistrate had a 'substantial basis for . . . concluding' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."  Id.  Probable cause "does not demand certainty but only a '*fair probability*' that contraband or evidence of a crime will be found."  United States v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004), cert. denied, 544 U.S. 990 (2005) (emphasis added).

---

[16]        "[T]here is no legal requirement under either New York or Federal law that a confidential informant personally present sworn testimony before a warrant may issue". Kirkland v. City of New York, 2007 WL 1541367, *6  (E.D.N.Y. 2007).

Defendants raise a variety of arguments challenging probable cause.  First, they argue that there is "no indication as to the reliability of the . . . informant".  Greenman Declaration [224], ¶108.  However, Detective Hawthorne's Affidavit states that the CS admitted to purchasing cocaine from Pettway.  "Admissions of crime . . . carry their own indicia of credibility - sufficient at least to support a finding of probable cause to search".  United States v. Harris, 403 US 573, 583 (1977).

They also argue that there is "no indication of the specific time when Pettway . . . sold any controlled substance".  Greenman Declaration [224], ¶107.  Detective Hawthorne's Affidavit [224-1] states that the confidential source purchased cocaine from Pettway "numerous times over the course of the last several months" (id.,  p. 4 of 6).  "While the search warrant application does not list the exact date of the controlled purchase, the omission of the exact date of the controlled purchase does not deprive the issuing judge essential information to make a probable cause determination." United States v. Gildersleeve, 2013 WL 1908049, *5 (W.D.N.Y.), adopted  2013 WL 1908310 (W.D.N.Y. 2013).

The fact that there were ongoing sales occurring over the several months leading to the issuance of the Search Warrant is also sufficient to defeat any staleness arguments. "[W]hen the supporting facts present a picture of continuing conduct or an ongoing activity, the passage of time between the last described act and the presentation of the application becomes less significant." United States v. Ortiz, 143 F.3d 728, 732 (2d Cir.), cert. denied, 525 U.S. 910 (1998).  "[I]n investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale." Id. at 732  33.  See United States v. Washington, 2012 WL 5438909, *8

(S.D.N.Y. 2012) ("Courts in this district have repeatedly concluded that narcotics offenses are the sort of crime for which even months-old information can support probable cause"); United States v. Melissa, 2005 WL 2414550 (S.D.N.Y. 2005) (approximate two month delay in seeking warrant in drug trafficking case does not render probable cause stale).

Defendants further argue that "there is no indication from the face of the application to connect . . . Pettway to the premises which was sought to be searched". Greenman Declaration [224], ¶107. "A showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004). Detective Hawthorne's Affidavit [224-1], which stated that the confidential source knew Pettway "to possess cocaine and sell cocaine from 23 Roosevelt Upper Apartment" (id., pp. 4-5 of 6), was sufficient to establish his nexus with that residence.

Alternatively, even if probable cause was lacking from the face of the Search Warrant application, the government appears to rely upon the good-faith exception of United States v. Leon, 468 U.S. 897 (1984). Government's Consolidated Response [246], pp. 7-8. See Black's Reply [249], p. 3 ("The government argues merely that the good faith exception of . . . Leon . . . applies"). Suppression is to be the "last resort, not [the court's] first impulse". Herring v. United States, 555 U.S. 135, 140 (2009). "Thus, in United States v. Leon, the Supreme Court recognized an exception to the exclusionary rule for 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" United States v. Clark, 638 F.3d 89, 99 (2d Cir. 2011). "In assessing whether it has carried that burden, we are mindful that . . . that most searches conducted pursuant to a warrant would likely fall within its protection." Id. at 100.

"[A]gainst this presumption of reasonableness", four circumstances have been identified where the good faith presumption of reasonableness will not apply to preserve evidence from suppression: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Id.

Although the government argues that "in moving to suppress, neither defendant has addressed the application of . . . Leon, (Government's Consolidated Response [246], p. 8), as argued by defendant Black (Black's Reply [249], p. 3), "[t]he burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant". Clark, 638 F.3d at 100. Though the government does little to support its reliance on the Leon good-faith exception, its arguments concerning the existence of probable cause equally support that the warrant was not so lacking in probable cause as to render reliance upon it unreasonable. *See, e.g.,* United States v. Muhammad, 520 Fed.Appx. 31, 39 (2d Cir.) (Summary Order), cert. denied, __ U.S. __, 134 S.Ct. 128 (2013) ("For the same reasons we conclude that the affidavit provided probable cause, we conclude that the warrant application was not so lacking in indicia of probable cause as to render reliance upon it unreasonable").

Defendants rely on the third  limit to the good-faith exception, arguing that the "warrant is so lacking in indicia of probable cause . . .  that reliance on it is unreasonable". Black's Reply [249], p. 4.  "This is a very difficult threshold to meet." United States v. Falso, 544 F.3d 110, 128 (2d Cir. 2008), cert. denied, 558 U.S. 933 (2009).  It "frequently arises when affidavits are bare bones, *i.e.*, totally devoid of factual circumstances to support conclusory

allegations". <u>Clark</u>, 638 F.3d at 103.  Here, however, the search warrant application - even

absent the *in camera* testimony of the confidential source -  is far from so devoid of probable

cause as to render reliance upon it unreasonable.  While defendants also rely on the fourth limit

to the good-faith exception by arguing that the warrant itself was "so facially deficient that

reliance upon it is unreasonable" (Black Reply [249], p. 4), they point to no specific facial

deficiency with the warrant itself beyond the inconsistency as to whether *in camera* testimony

was considered.  Therefore, I recommend that defendants' motion to suppress physical evidence

seized from 23 Roosevelt Street, upper apartment, be denied.


        **2.      Overbroad Execution**

        Defendant Pettway argues that Detective Hawthorne's grand jury testimony[17]

establishes that the seizure of certain items exceeded the scope of the warrant and seeks a

"hearing to determine the propriety of the seizure of the evidence".  Greenman Declaration [224],

¶¶120-21.  For example, he notes that at least one computer was seized, but there does not appear

to be any express authorization for the seizure of computers or electronic devicesin the search

warrant.  He also argues that, contrary to the government's representations, they have not been

provided with a copy of the inventory to the search warrant and request a copy (<u>id</u>., ¶120).

        The government does not respond to this motion.   Therefore, to the extent the

inventory has not been produced to defendants Pettway and Black, it shall be produced, and a

hearing on the breadth of the execution of the warrant will be scheduled at a later date.

---

[17]        This testimony does not accompany the motion.

3.       **Franks** **Hearing**[18]

"To secure a Franks hearing, a defendant must both (1) make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' and (2) show that 'the allegedly false statement [was] necessary to the finding of probable cause'". United States v. Morris, 509 Fed.Appx. 58, 60 (2d Cir. 2013) (Summary Order) (quoting Franks, 438 U.S. at 155  56). "To determine if the false information was necessary to the issuing judge's probable cause determination, i.e., material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant . . . . If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).

The only basis upon which defendants seek a  Franks hearing is that Detective Hawthorne's Affidavit stated that he had information from "confidential sources", but only identified information from a single confidential source.  Greenman Declaration [224], ¶112.  In response, the government characterizes this as a "typo", rather than a deliberate attempt to mislead Judge Case.  Government's Consolidated Response [246], p. 7 n. 2.

I agree that there is nothing to suggest that the reference to multiple confidential sources was  included by Detective Hawthorne knowingly and intentionally, or with reckless disregard for the truth.  However, even excluding the statement from Detective Hawthorne's Affidavit that he had information from multiple confidential sources, as previously discussed, the

---

[18]       Franks v. Delaware, 438 U.S. 154 (1978).

information provided from the lone confidential source was sufficient to establish probable cause

for the warrant.  Therefore, I recommend that the motion for a <u>Franks</u> hearing be denied.


**E.      Motion to Suppress Statements**

Defendant Pettway moves to suppress his statements made at the time of the

execution of the search warrant at 23 Roosevelt Street on January 18, 2012.  His motion seeks a

hearing (Greenman Declaration [224], ¶25) to determine whether his statements are admissible

upon two grounds.  First, he argues that he was subjected to a custodial interrogation without any

<u>Miranda</u> warnings having been provided to him (<u>id.</u>, ¶24).  Defendant Pettway supports this

portion of his motion with an Affidavit [224-2], stating "Any statement taken came as a result of

questioning or interrogation by the questioning officers at the scene.  In that regard, I do not have

any specific recollection of having been provided with <u>Miranda</u> warnings" (<u>id.</u>, ¶4).  The

government responds that "[t]his, of course, is not the same as Pettway saying 'I was not

provided with my Miranda warnings' which . . . is necessary for Pettway to be entitled to a

suppression hearing".  Government's Consolidated Response [246], p. 6.  Neither party submits

any case authority on this issue.

An evidentiary hearing on a motion to suppress is required "if the moving papers

are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that

contested issues of fact [exist]".  <u>United States v. Watson</u>, 404 F.3d 163, 167 (2d Cir. 2005).

Therefore, "the Court has discretion to deny a hearing where . . . the defendant's papers fail to

create a dispute over a material fact".  <u>United States v. Carter</u>, 2012 WL 4721117, *2

(W.D.N.Y.), <u>adopted</u> 2012 WL 4713900 (W.D.N.Y. 2012) (*citing* <u>United States v. Caming</u>, 968
F.2d 232, 236 (2d Cir. 1992)).

   Generally, a defendant's inability to recall whether <u>Miranda</u> warnings were
provided, particularly when coupled with admissible evidence from the government that the
warnings were provided, does not entitle the defendant to a hearing.  *See* <u>United States v. Miles</u>,
2012 WL 4178274, *6 (S.D.N.Y.2012) ("failing to recall certain conversations with law
enforcement does not give rise to a factual dispute, particularly where the Government supplies
undisputed written confirmation of Defendant's consent"); <u>United States v. Jimenez</u>,  2011 WL
308401, *6  (S.D.N.Y. 2011) ("Jimenez's failure to recall whether he was warned, when coupled
with the unchallenged notification and waiver of rights actually signed by Jimenez . . . , [does
not] create a question of fact regarding whether his subsequent interrogation was proper under
<u>Miranda</u>"); <u>United States v. Love</u>, 859 F.Supp. 725, 735 (S.D.N.Y.1994), aff'd, 41 F.3d 1501 (2d
Cir. 1994) and 100 F.3d 942 (2d Cir.), <u>cert</u>. <u>denied</u>, 519 U.S. 951 (1996); <u>United States v. Jass</u>,
331 Fed.Appx. 850, 855 (2d Cir. 2009) (Summary Order), <u>cert</u>. <u>denied</u>, 558 U.S. 1159 (2010),
<u>cert</u>. <u>denied</u>, 559 U.S. 1087(2010).  Here, the government does not offer any admissible evidence
that <u>Miranda</u> warnings were given or supporting that they were not necessary in this
circumstance.  However, even in absence of evidence establishing that <u>Miranda</u> warnings were
given, courts have held that an inability to recall being provided <u>Miranda</u> warnings is insufficient
to establish an entitlement to an evidentiary hearing.  *See* <u>United States v. Kuznetsov</u>, 442
F.Supp.2d 102, 111 (S.D.N.Y. 2006) ("Defendant does not state that he was not given <u>Miranda</u>
warnings. Instead, he states  . . . that '. . . . [he had] no recollection of what [he] now know[s] to
be [his] <u>Miranda</u> rights.'  . . . This one sentence in Defendant's declaration is not  sufficiently

specific, detailed or nonconjectural and therefore does not raise a contested issue of fact requiring

an evidentiary hearing"); United States v. Jimenez, 2011 WL 308401, *6 (S.D.N.Y. 2011);

United States v. Giamela, 2005 WL 1423332, *1 2 (S.D.N.Y. 2005); United States v. Arthur,

2002 WL 523254, *5 (S.D.N.Y. 2002) ("Arthur's only statement on the matter appears by way of

affidavit in which he declares that, "I have no recollection of being read my rights in the

apartment at that time.  Arthur's recollection reflects only that a Miranda warning may or may

not have been given to him. The ambiguity presented by Arthur's affidavit is insufficient to

create the type of factual dispute that triggered an evidentiary hearing").[19] Therefore, I

recommend that this portion of defendant Pettway's motion be denied without a hearing.

Second, defendant Pettway's counsel argues that "[i]n addition to [Pettway's]

affidavit, counsel believes that there was no reason for Mr. Pettway to be immediately arrested at

the time the officers entered into the premises.  Indeed, probable cause did not exist to arrest him.

As a consequence, the fact that Mr. Pettway was illegally arrested, lends to the fact that he was

taken into custody without the benefit of probable cause to believe that he had committed a crime

and, as a result, any subsequent questioning of Mr. Pettway during the course of the execution of

the search warrant was tainted and must be suppressed".  Greenman Declaration [224], ¶23.

The government initially failed to address this argument in its response to

defendant Pettway's motion.  At the March 5, 2014 oral argument, I permitted the government

---

[19]        I recognize that there is some contrary authority. See, e.g., United States v. Cortez, 1995
WL 422029, *2 (S.D.N.Y.1995) (where the government submitted admissible evidence that Miranda
warnings were provided, defendant's "statement that she does not recall receiving warnings, since it is
made on personal knowledge, constitutes the equivalent of a denial" sufficient to warrant a hearing);
United States v. Larranga Lopez, 2006 WL 1307963, *4 (E.D.N.Y.2006) (granting a hearing where the
defendant did not remember whether he was given Miranda warnings and the government did not offer
any evidence to support its allegation that the warnings were provided).

with an additional opportunity to respond "to that aspect of Pettway's motion seeking suppression of his statements as a result of his allegedly illegal arrest . . . including an explanation as to why a timely response to that aspect of Pettway's motion was not filed". March 5, 2014 Text Order [256]. However, it did not avail itself of this opportunity.

Based upon the government's failure to twice respond to defendant Pettway's motion, I will treat this aspect of defendant Pettway's motion as being unopposed, and will grant his request for a hearing on this issue.


**F.     Motions to Suppress Identifications**

   **1.     Defendant Tyrone Brown**

Defendant Tyrone Brown initially requested a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967) concerning the April 30, 2012 identification by J.M. from a photo array. Musitano Affirmation [225], ¶¶70-76. In response, the government argued that he failed to establish that the photo array was suggestive. Government's Consolidated Response [246], p. 19. At the March 5, 2014 oral argument, I directed the government to produce further materials concerning that identification and permitted defendant Tyrone Brown to supplement his motions. March 5, 2014 Text Order [256].

Defendant Tyrone Brown's supplemental motion [270] provides additional facts in support of his motion to suppress the identification (id., ¶¶9-15) and he has also provided me with a copy of the photo array to review under seal. Although I gave the government an opportunity to respond to defendant Tyrone Brown's supplemental motion [273], it did not do so. Having reviewed the photo array, and there being no opposition from the government to

defendant Tyrone Brown's supplemental motion, I conclude that he has established his

entitlement to a Wade hearing, which has been scheduled [364].

2.        Defendant Ramos

In his initial discovery motion,  defendant Ramos moved in conclusory fashion for

a Wade hearing concerning unspecified identifications that occurred from 2010 to 2012.  Agro

Affidavit [152], ¶¶37-42.  Likely attributable to the fact that this motion was filed prematurely

with the initial round of discovery motions, the government did not respond to it, and it does not

appear to have been renewed by defendant Ramos when I provided the parties with the

opportunity to file any additional motions.

In any event,  "the Constitution does not require trial courts to hold pretrial

hearings concerning the suggestiveness of an identification procedure." United States v.

Ruggiero, 824 F.Supp. 379, 396 (S.D.N.Y.1993), aff'd, 44 F.3d 1102 (2d Cir.1995) (citing

Watkins v. Sowders, 449 U.S. 341, 349 (1981)). See United States v. Archibald, 734 F.2d 938,

940 (2d Cir. 1984) (the defendant was not "deprived of due process by the district court's

exercise of its discretion in not holding a pretrial hearing on the issue of suggestiveness. No per

se rule requires such a hearing" (emphasis omitted)). To be entitled to a hearing to determine the

admissibility of identification testimony, the defendant must "set[ ] forth facts which, if proven,

would entitle him to the relief sought". United States v. McGee, 2000 WL 1520957, *14

(W.D.N.Y. 2000) (citing United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir.1969), cert.

denied, 396 U.S. 1019 (1970)). See United States v. Williams, 2014 WL 144920, *1 (S.D.N.Y.

2014) ("Significantly, a defendant may not baldly request . . . a Wade hearing. To be entitled to a

hearing, a defendant must instead allege facts supporting his contention that the identification procedures used were impermissibly suggestive. A 'threshold showing' of suggestiveness is necessary in order to trigger a <u>Wade</u> hearing" (internal quotations omitted)). "In the absence of a sufficient pre-trial showing of impropriety, exploration of the circumstances surrounding the identification procedures may be properly left to cross-examination at trial." <u>United States v. Salomon  Mendez</u>, 992 F.Supp.2d 340, 343 (S.D.N.Y. 2014).

Defendant Ramos' generalized argument that unspecified pretrial identifications were unduly suggestive are insufficient to warrant a pretrial <u>Wade</u>  hearing. Therefore, I recommend that his motion to suppress the  identifications be denied.

## G.      Motions for Rule 16(a)(1) Discovery

The government represents that it "has fully complied with subsections (A), (B), (D), (E) and (F) of Rule 16(1)" and if it acquires "additional evidence that falls within the scope of any of these rules, [it] will provide that evidence to the defendants in a timely fashion". Government's Consolidated Response [216], p. 7.  At the March 5, 2014 oral argument, I  gave the government 14 days to "provide defendants with any remaining [Rule] 16 discovery currently in its possession and with notice of its intent to use evidence pursuant to Rule 12(b)(4)(B)" and no party has advised me that this did not occur.  March 5, 2014 Text Order [256].

The government further represents that, with respect with its expert witness disclosures pursuant to Rule 16(a)(1)(G),  laboratory reports have been produced which constitute the "written summaries" required by that Rule and that it will produce its experts' curriculum vitae as "we get closer to trial (and settle on the expert who will, in fact, testify)".

-40-

Government's Consolidated Response [216], p. 7.[20]   Any remaining disclosures pursuant to Rule

16(a)(1)(G) shall occur no later than 30 days before trial, or as otherwise directed by the trial

judge. *See* <u>United States v. Lino</u>, 2001 WL 8356, *21 (S.D.N.Y.2001) ("this Court directs that

the Government provide expert witness disclosure to defendants thirty days before trial").

At this point, I have no reason to question the government's representations or

whether it has otherwise complied with its Rule 16(a)(1) discovery obligations.  *See* <u>United

States v. Johns</u>, 336 F .Supp.2d 411, 424 (M.D.Pa. 2004) ("The court is entitled to rely on the

representations of counsel, as officers of the court"); <u>Theodore v. State of New Hampshire</u>, 614

F.2d 817, 822 (1st Cir. 1980) ("Attorneys are officers of the court and a judge has the right, in

most circumstances, to rely on their representations to him").


**H.      Motions for Bills of Particulars**

Defendants Jones ([204], ¶10), Tyrone Brown ([225], ¶¶43-69) and Pettway

([224], ¶¶31-44) move for bills of particulars.  In response, the government argues that 1)

defendants have "failed to specify any basis for their needs for the requested information"

(Government's Consolidated Response [246], pp. 13-14); 2) the Fourth Superseding Indictment

"is a speaking indictment and, as such . . . is pled in sufficient detail to render a bill of particulars

wholly unnecessary" (<u>id</u>., p. 14); and 3) their "requests for evidentiary detail . . . must be denied"

(<u>id</u>.).

Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with

sufficient particularity the nature of the charge pending against him, thereby enabling defendant

---

[20]      The government further represents pursuant to Rule 12(b)(4) that it "intends to use all of
the evidence" produced.  Government's Consolidated Response [216], p. 5.

to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be

prosecuted a second time for the same offense". United States v. Bortnovsky, 820 F.2d 572, 574

(2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so

general that they do not advise the defendant of the specific acts of which he is accused." United

States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden is upon defendants to show that

non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would

adversely affect defendants' rights". United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y.

2014) (Scott, M.J.).

       "In deciding a motion for a bill of particulars, the important question is whether

the information sought is necessary, not whether it is helpful." United States v. Conley, 2002

WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence,

witnesses, and legal theories to be offered by the Government at trial or as a general investigative

tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

       The court "has the discretion to deny a bill of particulars if the information sought

by defendant is provided in the indictment or in some acceptable alternate form". United States

v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). See United States v. Messina, 2012 WL 463973,

*10 (E.D.N.Y. 2012) ("In determining whether a defendant has shown such necessity, the trial

court must examine the totality of the information available to the defendant, including the

indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within

the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir.

1984).

Defendants Pettway and Tryone Brown seek extensive particularization of each of the counts of the Fourth Superseding Indictment applicable to them.[21]  However, notwithstanding the breadth of their requests,   defendants do little to detail with any degree of specificity their need for the requested particularization.  *See* United States v. Nguyen, 2007 WL 1111237, *6 (W.D.N.Y. 2007) ("Defendant fails to specify any need for the particularization requests, as is her burden. . . . Rather, Defendant makes only bald, conclusory assertions that she is requesting such particularization, without proffering any explanation as to why such information is necessary. . . . As such, Defendant's particularization request simply is devoid of the specificity necessary to substantiate the requested particularization").   Although defendants characterize the Fourth Superseding Indictment as being "bare bones" (Greenman Declaration [224], ¶44), the 55-page Fourth Superseding Indictment is far from being bereft of detail.  In fact, it  provides significant detail of the acts underlying the charges in this case.

Although much of the particularization defendants seek centers on the conspiracy charges (*see, e.g.,* Greenman Declaration [224], ¶¶37(a)-(pp), (yy)-(zz), (hhhh)-(jjj)), "defendants are generally not entitled to receive details of the government's conspiracy allegations in a bill of particulars, and details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial." United States v. Bronson, 2007 WL 2455138, *11 (E.D.N.Y. 2007).  *See* United States v. Busch, 2013 WL 3759944, *5  (W.D.N.Y. 2013) ("It is settled that the government should not be required to furnish particulars relating to the formation of a conspiracy, including when and how it was

---

[21]     The government estimates that the particularization sought "may set the record for the Western District of New York".  Government's Consolidated Response [246], p. 10 n. 4.

-43-

formed and when a particular defendant joined, because such details need not be proven at trial").

While defendants also seek the identities of the unindicted co-conspirators, "identification is generally inappropriate in cases where the defendant is charged with 'extreme acts of violence in order to protect the government's investigation and the safety of unindicted co-conspirators". United States v. Taylor, __ F.Supp.2d__, 2014 WL 1653194, *13 (E.D.N.Y. 2014). They have also "not established that such disclosure is necessary prior to the disclosure of such information along with other Jencks material". United States v. Busch, 2014 WL 2435596, *3 (W.D.N.Y. 2014).

Defendants further point to nature of the RICO and RICO conspiracy charges against them as supporting their entitlement to particularization. Greenman Declaration [224], ¶¶33, 38-42. I agree that the general principles governing a defendant's entitlement to a bill of particulars "must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO. With the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope." United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988).

For example, in Bortnovsky, a RICO prosecution, in which the government alleged a scheme to defraud through submission of false insurance claims for burglary losses and fire damage, the Second Circuit found that defendants were "hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information: the dates of the fake burglaries and the identity of the three fraudulent documents. Appellants were forced to

explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending."  820 F.2d at 574-75. "The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged."  Id. at 575.

Similarly, in Davidoff, the RICO conspiracy count alleged a pattern of racketeering activity and that the extortion offenses "included but were not limited to" the four extortion counts in the indictment. 845 F.3d at 1153. The defendants unsuccessfully requested a bill of particulars about the unspecified extortion offenses.  At trial the government introduced evidence of extortion offenses that were not alleged in the indictment.  Id.  The Second Circuit reversed because the district court denied defendants' motion for a bill of particulars identifying victims of a RICO scheme and allowed the government to introduce evidence at trial as to acts of extortion not alleged in the indictment.

However, rather than creating a broad presumption in favor of the entitlement to bills of particulars in RICO cases, the Second Circuit was careful to limit Davidoff's holding to the facts presented: "We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute. But here it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made prior to trial." Id. at 1154. See United States v. Muyet, 945 F.Supp. 586, 599 (S.D.N.Y.1996) (denying a bill of particulars "[w]ith respect to the RICO enterprise and the RICO conspiracy charges, [where] the indictment provides the defendants with:

-45-

(1) the names and aliases of the defendant members of the RICO enterprise and conspiracy; (2) the name of the enterprise; (3) a brief description of the purposes, means and methods of the RICO enterprise; (4) the area in which the enterprise operated; and (5) the approximate duration of the enterprise. Furthermore, as explained below, the indictment provides ample detail regarding the alleged predicate acts of the RICO enterprise. The Court finds that the indictment, by itself, fully satisfies the specificity requirements of Rule 7").

Here, the government relies primarily upon the detail of the Fourth Amended Superseding Indictment, rather than the discovery produced, as sufficiently apprising defendants of the charges against them. *Compare with* Busch, 2013 WL 3759944 at *5 ("the government has produced thousands of documents as part of the voluntary discovery in this case, including all the wire tap applications and affidavits providing further details of the investigation. The defendants have also been provided with audio and text files of the various intercepted conversations involving the defendants, which include conversations which serve as evidence of the RICO enterprise and conspiracy").  Indeed, although the government notes that it has "provided full discovery", it concedes that its case "is built almost entirely upon testimony". Government's Consolidated Response [246], pp. 13-14.  *See* Government's Consolidated Response [216], p. 8 ("[T]his case is, to a very large degree, dependent on the testimony of the victims of crimes of violence, bystanders who witnessed these same crimes of violence and other members of the Bailey Boys , and other, rival gangs who were shot or shot at by the defendants").

While I agree that the detail of the Fourth Superseding Indictment is largely sufficient to enable the defendants to adequately prepare a defense and avoid prejudicial surprise at trial and defendants have done little to show why particularization is necessary, since this case

is built on the testimony of witnesses, rather than document discovery, I conclude that defendants are entitled to the following particularization:

        1)      The identities  of Victim #3 (Fourth Superseding Indictment [139], Count 10 and Fourth Racketeering Act) and Victim #10 (id., Counts 25 and 26, Eighth Racketeering Act).  See Musitano Affirmation [225], ¶¶56(b), 57(a), 63(g), 66(g).[22]  See United States v. Eldridge, 2010 WL 3749060, *8 (W.D.N.Y. 2010) (ordering similar particularization).  Compare with United States v. Columbo, 2006 WL 2012511, *6  (S.D.N.Y. 2006) (declining to order the disclosure of the identities of the loansharking victims where that information was available from audio recordings produced).

        Based upon the allegations of violence, I recognize the risk to the victims that may be posed if their identities are disclosed (assuming that their identities are unknown).  Therefore, this information shall be provided initially on an attorney's eyes only basis, without prejudice to counsels' ability to agree with the government as to a broader disclosure or to seek such relief from the court;

        2)      Identify whether the defendants named in Counts 10, 11, 25 and 26 and Fourth and Eighth Racketeering Acts acted as a principal, accomplice,  or both.  See Musitano Affirmation [225], ¶¶56(b), 57(j), 64(i), 66(i), 67(i).  It shall provide the same information to defendants named in Count 28.  See Greenman Declaration [224], ¶37(nnn).  See Eldridge, 2010 WL 3749060 at *8;

        3)      If not specified in the Fourth Superseding Indictment, the government shall

---

[22]      Although the co-defendants have generally joined in these motions, I have not expanded the requests for particularization made by defendants Pettway, Tyrone Black , and Jones beyond the counts they have identified.

identify the firearms, if such information is known to the government, alleged to be possessed by by defendants.  Greenman Declaration [224], ¶37(mmm), (uuuu); Musitano Affirmation [225], ¶¶54(c), 55(f), 57(e), 59(b), 61(b), 62(b), 63(h), 64(h), 65(c), 66(h), 67(h); Farley Affirmation [2-4], ¶¶10(e), (g). *See* Eldridge, 2010 WL 3749060 at \*8; and

> 4)      Whether it is alleged that, other than the possession of any weapon, defendant Pettway committed any specific acts of violence against any other individual.

Greenman Declaration [224], ¶37(xxx).

## I.      Motions for Brady/Giglio Material[23]

Defendants Jones ([204], ¶20), Tryone Brown ([202], ¶¶9-27), Ramos ([152], ¶30), and Pettway ([224], Point VI)[24] move to compel production of all Brady and Giglio material.  In response, the government argues that the "only 'Brady material' [it] currently possesses are the criminal histories ('rap sheets') of many of [its] witnesses", but that it is withholding this information since it would "give the defendants fertile ground for trying to intimidate, or do worse, to these witnesses".  Government's Consolidated Response [216], p. 9.[25]  Nonetheless, it agrees to produce this material to counsel when the Jencks Act material is produced.  Id.  The

---

[23]      Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972).

[24]      In its response to the Pettway's Supplemental Motions [224], which were filed following the initial round of discovery motions, the government argues that it does not respond to Sections V though IX of that motion (seeking informant identities, Brady and Jencks Act material and preservation of rough notes) since that was relief that was decided at the October 1, 2013 oral argument.  However, defendant Pettway did not specifically seek all of this  relief in his initial motion [183] nor were all of these issues decided at the October 1, 2013 oral argument.

[25]      The government also agrees to conduct a search of the personnel files of the agents and officers who will be testifying and will turn over any Brady material to defendants or seek a determination from the court as to whether it constitutes Brady material.  This moots defendant Ramos' request pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). Agro Affidavit [152], ¶28.

government further acknowledges its <u>Brady</u> obligations, and agrees that if it comes into

possession or learns of any additional <u>Brady</u> material, it will disclose this material "in time to give

the defense a reasonable opportunity to investigate the information or otherwise use it

effectively".  <u>Id</u>. at pp. 9-10.

   "The government's obligations under <u>Brady</u> . . . are seemingly well-established.

The prosecution has a constitutional duty to disclose evidence favorable to an accused when such

evidence is material to guilt or punishment . . . . This duty covers not only exculpatory material,

but also information that could be used to impeach a key government witness." <u>United States v.</u>

<u>Coppa</u>,  267 F.3d 132, 135 (2d Cir. 2001) (<i>citing</i> <u>Giglio</u>, 405 U.S. at 154).  "[A]s a general rule,

<u>Brady</u> and its progeny do not require immediate disclosure of all exculpatory and impeachment

material upon request by a defendant." <u>Id.</u> at 146.  "[A]s long as a defendant possesses <u>Brady</u>

evidence in time for its effective use, the government has not deprived the defendant of due

process of law simply because it did not produce the evidence sooner." <u>Id</u>. at 144.  "[T]he time

required for the effective use of a particular item of evidence will depend on the materiality of that

evidence . . . , as well as the particular circumstances of the case".  <u>Id</u>. at 146.

   Based upon the government's representations, these motions are denied, without

prejudice.[26]  Consistent with <u>Coppa</u>, the government shall timely disclose <u>Brady</u> and <u>Giglio</u>

materials to defendants.  <i>See</i> <u>United States v. Hill</u>, 2012 WL 912948, *5  (W.D.N.Y. 2012).

---

[26] Although defendants point to various categories of items they argue constitute <u>Brady</u> material (<i>see, e.g.</i>, Musitano Affirmation [202], ¶27), in response to the government representations they identify no particular items that have not been produced.

**J.**      **Motions for Early Disclosure of Jencks Act (18 U.S.C. §3500) Material**

Defendants Pettway ([183], ¶24), Allen ([186], ¶VI), Jones [204], ¶¶21-23), Ramos ([152], ¶31) move for early disclosure of Jencks Act material.  In response, the government argues, *inter alia*, that the "Court simply lacks the authority to grant defendants' requests". Government's Consolidated Response [216], p. 8.  Nonetheless, while the government is unwilling to disclose Jencks material well prior to trial, it acknowledges that defendants may renew their motions for this issue to be addressed by Judge Skretny as the trial approaches (id., p. 8 n. 6 ("This . . . is more of a trial and trial management issue that is better left to Judge Skretny to address with the parties as trial approaches")).

"Courts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material." United States v. Morgan, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010). *See* United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001) (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); In re United States,  834 F.2d 283, 287 (2d Cir. 1987) ("as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act");  United States v. Parris,  2014 WL 2745332, *14  (S.D.N.Y. 2014) ("The Jencks Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material").  Defendants cite no contrary authority.  Therefore, their motions are denied, without prejudice.

However,  the Jencks Act does not prohibit the court's authority to order disclosure of witness statements as mandated by Brady and Giglio, which are addressed above. *See* United

States v. Thompson,  2013 WL 6246489, *9 (S.D.N.Y. 2013) ("The Second Circuit has

interpreted the Jencks act to 'prohibit[ ] a District Court from ordering the pretrial disclosure of

witness statements,' at least to the extent that disclosure is not otherwise mandated by Brady and

Giglio").  In this regard, the government is reminded that "[t]o the extent that [Jencks] material

and Giglio material overlap, the dictates of the constitutional pronouncements of Brady and Giglio

control." United States v. Hernandez,  2010 WL 26544, *6 n. 2 (S.D.N.Y. 2010).

       Apart from the timing of the Jencks Act material, the parties dispute whether the

FBI 302s, which "are notes of witness interviews that were transcribed by an FBI agent and not by

the witnesses", constitute Jencks Act material.  United States v. Price, 542 F.3d 617, 621 (8th Cir.

2008).   At the conclusion of the October 1, 2013 oral argument, I permitted defendants to

supplement their request for FBI 302s, and gave the government an opportunity to respond.

October 1, 2013 Text Order [219].  Pursuant to my Text Order, defendant Tyrone Brown filed a

supplement in support of his motion for the FBI 302s.  *See* Musitano Affirmation [225], ¶¶36-42.

In response, the government states that "at paragraphs 36-42 of his motions Tyrone Brown moves

again for pretrial discovery, a motion he previously made and which this Court has decided".

Government's Consolidated Response [246], p. 5.  Based upon this erroneous understanding, it

did not respond to defendant Tyrone Brown's motion for the FBI 302s.  Id.

       At the March 5, 2014 oral argument, I gave the defendants an additional

opportunity to  submit any additional authority supporting their entitlement to immediate

disclosure of  FBI 302s.  March 5, 2014 Text Order [256].  Defendant Tyrone Brown then filed a

supplementation to his earlier requests for the FBI 302s.  Musitano Affirmation [270], ¶¶16-20.

Although I set a briefing schedule on that motion [273], the government did not file a response.

Defendant Tyrone Brown argues that "[t]he Government opposes disclosure of these 302s and other similar documents on the grounds that they are Jencks material". Musitano Affirmation [270], ¶17.[27]  Additionally, the government argues that production of the FBI 302s will threaten witness safety. *See* Government's Consolidated Response [216], p. 2 ("the defendants are not entitled to have . . . 302s and other similar documents now and should expect the government will resist turning over these types of documents over until shortly before trial so that our witnesses will have some assurance of their safety").   "The government's responsibilities with regard to the FBI 302 are governed by the Jencks Act".  United States  v. Broadnax, 2007 WL 3355396, *2  (D.Conn. 2007).  "The Jencks Act requires the government to disclose to a defendant statements made by a witness relating to the subject matter of the witness's direct examination. *See* 18 U.S.C. §3500(b).  The notes of a government agent who has interviewed a witness do not constitute the witness's 'statements'  in this context unless the witness has adopted those notes or the notes recite the witness's oral statements substantially verbatim . . . . Mere occasional inclusion by the agent of the witness's verbatim words do not make the agent's notes

---

[27]     Although it had opportunities to do so, it does not appear that the government offers any other arguments in opposition to defendant Tyrone Brown's motion.  Therefore, it is unnecessary for me to resolve whether Rule 16(a)(2) prohibits the  disclosure of FBI 302s as the government has not raised that argument.  *See* United States v. Holihan, 236 F.Supp.2d 255, 263-64 (W.D.N.Y. 2002) ("The FBI 302 reports are internal investigative documents 'made by the attorney for the government or any other government agent investigating or prosecuting the case' and, as such, are excepted from Rule 16 discovery. Fed.R.Crim.P. 16(a)(2). Such information may also qualify as Jencks Act material pursuant to 18 U.S.C. § 3500, and for which the court is without authority to order pretrial disclosure").

the witness's 'statements' in this context."  United States v. Cavazos, 542 Fed.Appx. 263, 271

(4th Cir. 2013), cert. denied, ___U.S.___, 134 S.Ct. 1570 (2014).

　　　　　To the extent the government is in possession of any FBI 302s  falling outside of

the ambit of the Jencks Act, those shall be produced.[28]   If there still exists any security concerns

with the immediate  production of these materials,[29] defendant Tyrone Brown acknowledges that

he would be agreeable to the production of these materials pursuant to the terms of a protective

order.  Musitano Affirmation [270], ¶19.  If necessary, the parties shall confer on the terms of a

protective order and if they are unable to agree on its terms, they shall notify the court.


**K.**　　**Motions for Disclosure of Grand Jury Proceedings**

　　　　　Defendants Ramos ([152], ¶¶20-21) and Pettway ([224], ¶¶99-100) move for

disclosure of the grand jury proceedings.  In response, the government notes that "[a]lmost every

witness who will appear at trial has testified in front of the grand jury" and "while the evidence is

substantial, the bulk of it is testimonial, and for both legal reasons . . . . , and for a very practical

reason - witness safety - the defendant are not entitled to grand jury testimony . . . until shortly

before trial so that our witnesses will have some assurance of their safety".   Government's

Consolidated Response [216], p. 2.  The government's response also argues that defendant Ramos

fails to "provide any evidence of grand jury abuse or grand jury irregularities, let alone allege

---

[28]　　This does not obviate any Brady obligations the government may have with respect to the FBI 302s.

[29]　　Defendant Tyrone Brown notes that "the Government has  provided police reports that would be the equivalent of 302s and similar documents containing information provided by declarants" and that there have been no security concerns associated with those disclosures.  Musitano Affirmation [225], ¶41.

-53-

either of these, and thus fails to demonstrate any 'particularized need' for the grand jury transcripts". Government's Consolidated Response [216], p. 10.

It is well established that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings". Douglas Oil Company of California v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979). While grand jury proceedings carry a presumption of secrecy (see Rule 6(e)(2)); this presumption is rebuttable. See In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996). "The burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy." Id. A party makes a showing of particularized need by demonstrating that the material which it seeks is "needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed". Douglas Oil Co., 441 U.S. at 222.

Defendant Ramos argues that production of the grand jury minutes is requested "in order to determine whether there has been compliance with Rule 6 with regard to attendance and number of jurors", and that the "grand jury transcripts are requested in accordance with Rule 6". Agro Affidavit [152], ¶¶20-21. These generalized arguments fail to overcome the strong presumption of regularity in grand jury proceedings. See United States v. Gonzalez, 2008 WL 3914877, *6 (S.D.N.Y.2008) ("A defendant's mere speculation as to what occurred in front of the grand jury does not warrant inspection of the minutes, either by disclosure to defense counsel or through in camera inspection by the Court").

In his motion filed after the government's response, defendant Pettway offers a different rationale for why the disclosure of the grand jury transcripts is necessary, arguing that he

is the subject of a "'bare bones' Indictment that does not state any particular acts or overt acts that he allegedly committed in the course of the conspiracy" and that "[t]he particularized need justifying disclosure is so that . . . [he] is informed of what evidence actually exists against him, and so he can intelligently make a decision as to his course of action". Greenman Declaration [224], ¶100. However, as discussed above, the Fourth Superseding Indictment is far from being bare bones. Moreover, the "transcripts of grand jury testimony of witnesses called by the government to testify at trial must be made available to the defendant pursuant to and in accordance with the provision of 18 U.S.C. § 3500". United States v. Mehta, 2013 WL 1878903, *10  11 (W.D.N.Y.2013). Therefore, these motions are denied.


**L.     Motions for Informant Disclosures**

Defendants Jones ([204], ¶¶11-15), Ramos ([152], ¶29), Allen ([186], pp. 9-11 of a 14, Point VII), and Pettway ([224], ¶¶45-57) move for disclosures concerning informants. At the October 1, 2013 oral argument the then pending motions by Jones, Ramos, and Allen for this relief were denied as moot based upon the government's representation that it did not use any non-testifying informants. October 2, 2013 Text Order [219].

However, the government has failed to address the subsequent motion filed by defendant Pettway. If the government also did not use any non-testifying informants against defendant Pettway, it shall  promptly notify him, failing which defendant Pettway's unopposed motion is  granted.

**M.      Motions for Disclosure of Government Witnesses**

Defendants Ramos ([152], ¶14) and Pettway ([224], ¶¶58-62) move for the disclosure of government witnesses.  "As a general rule, the Government is not under any obligation to disclose the identities of witnesses well in advance of trial."  United States v. Shteyman, 2011 WL 2006291, *8 (E.D.N.Y. 2011).  However, "a trial court has the discretion to compel the disclosure of the identity of government witnesses where there has been a particularized showing of need."  United States v. Perryman, 2013 WL 4039374, *8 (E.D.N.Y. 2013) (citing United States v. Cannone, 528 F.2d 296, 300 (2d Cir. 1975)).

"In determining whether to exercise its discretion, the trial court needs to balance the defendants' specific need for the material against the possible dangers accompanying disclosure (i.e. subornation of perjury, witness intimidation, and injury to witnesses)."  Id. "To that end, district courts in this Circuit have looked to the following factors:

> (1) Did the offense alleged in the indictment involve a crime of violence? (2) Have the defendants been arrested or convicted for crimes involving violence? (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)? (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial? (5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult? (6) Do the defendants have limited funds with which to investigate and prepare their defense?" Id., *9

The government argues that factors 1, 3, 4, and 5 all weigh in favor of non-disclosure Government's Consolidated Response [216], p. 14.  Although I question whether factor 3 applies (since this does not appear to be a case consisting of testimony *relating to documents)*,

defendants do not attempt to rebut the government's reliance on these factors.  Therefore, these

motions are denied.

    Defendant Ramos also seeks ([152], ¶30(a)) the identity of  all witnesses favorable

to him.  To the extent this constitutes <u>Brady</u> material, it shall be produced consistent with the

government's <u>Brady</u> obligations and representations.  *See* <u>United States v. Patel</u>, 2002 WL

1750948, *3 (N.D.Ill.2002) ("[T]o the extent that any request for witness lists seeks the identities

of persons who can provide information favorable to the accused which is material to guilt or

innocence, the Government must furnish Patel with the identities of those persons under <u>Brady</u>" );

<u>United States v. Messino</u>, 855 F.Supp. 955, 967 (N.D.Ill.1994) ("To the extent defendants'

requests for witnesses seek disclosure of the identities of persons who can provide information

favorable to the accused which is material to guilt, the government must furnish the defendant

with the identities of these persons pursuant to <u>Brady</u>" ).


**N.**  **Motions to Exclude Statements by Non-Testifying Co-Conspirators**

    Defendant Pettway ([224], Point IIII) moves to exclude statements by non-

testifying co-conspirators.  "Defendants are not entitled to a pretrial hearing to determine the

admissibility of coconspirator statements".  <u>United States v. Busch</u>, 2013 WL 3759944, *3

(W.D.N.Y.2013) (Scott, M.J.).  Similarly, challenges to the admissibility of a statement under

<u>Bruton v. United States</u>, 391 U.S. 123 (1968) are more appropriately determined by the trial judge.

*See* <u>id</u>.  Therefore, this motion is denied, without prejudice to renewal.

**O.      Motion to *Voir Dire* Government Experts Outside the Presence of the Jury**

Defendant Pettway ([224], ¶¶126-131) moves to *voir dire* government experts outside the presence of the jury. This motion is better addressed by the trial judge.  Therefore, this motion is denied, without prejudice to renewal.

**P.      Motions for Fed. R. Evid. 403, 404(b), 609 and 807 Evidence**

Defendants Pettway ([224], ¶¶88-92), Allen ([186], pp. 6-7 of 14, ¶V), Jones ([204], ¶¶16-18), and Ramos ([152], ¶¶33-36) seek these disclosures.  Responding only to the motions filed defendants Allen and Ramos, the government states that it currently "does not have any evidence that is covered by these rules that it may seek to offer at trial".  Government's Consolidated Response [216], p. 6.  Based on the government's response, the motions by defendants Allen and Ramos are denied as moot.

However, the government fails to address the similar motions filed by Pettway and Jones.  If the government also does not currently intend on offering any evidence encompassed by these Rules at trial against these defendants, it shall promptly notify them, failing which defendant Pettway's and Jones' unopposed motions are granted.

**Q.      Motions to Preserve Rough Notes and other Evidence**

Defendants Allen ([186], ¶VIII), Pettway ([224], ¶¶96-98), and Ramos ([152], ¶12) have moved for an order directing the government  to preserve all rough notes taken as part of the investigation (whether or not they are incorporated into the official reports) and to preserve all evidence acquired in its investigation of defendants.  The government does not oppose these

motions.  Government's Consolidated Response [216], p. 6.  Therefore, these motions are granted.

**R.      Motion for Severance**

Defendant Pettway argues that he is "unable at this present time to delineate the specific basis for his motion to sever until such time as the court has ordered the government to comply with the discovery, bills of particulars, and other information which has been requested". Greenman Declaration [224], ¶136.  This motion is denied, without prejudice to renewal before the trial judge.  *See* United States v. Mireles, 2009 WL 4067643, *4 (W.D.N.Y. 2009).

**S.      Motions for Leave to File Additional Motions**

Defendants move for leave to file additional motions.  These motions are denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted. *See* Rule 12(e).

**CONCLUSION**

For these reasons:

-  -       Defendants' non-dispositive motions are granted in part and denied in part;

-  -       I recommend that defendant Pettway's motion to dismiss Counts  1, 2 and 28 of the Fourth Superseding Indictment (Greenman Declaration [224], ¶¶137-48) be granted[30];

-  -       I recommend that  defendants' motions to dismiss for facial insufficiency

---

[30]       Recognizing that many of the defendants have moved to join in the motions of their co-defendants, I will reserve my determination of which defendants these dismissals will apply to and the effect of these dismissals on the other counts of the Fourth Superseding Indictment pending Judge Skretny's ruling on my recommendations.

(Greenman Declaration [224], ¶¶149-51; Musitano Affirmation [225], ¶¶14-34), defendant

Ramos' motion to suppress identifications (Agro Affidavit [152], ¶¶37-42), defendants Pettway's

and Black's motions to suppress the search warrant for 23 Roosevelt Street, Upper Apartment, for

lack of probable cause (Greenman Declaration [224], Point XI; Hill Declaration [223-1]) and for a

Franks hearing (Greenman Declaration [224], ¶112),  and defendant Pettway's motion to suppress

statements taken in violation of Miranda  (Greenman Declaration [224], ¶¶18-22, 24) be denied;

and

- - Evidentiary hearings will be scheduled concerning defendants Pettway's and

Black's motion to suppress based upon overbroad execution of the search warrant for 23

Roosevelt Street, Upper Apartment (Greenman Declaration [224], ¶¶120-21), and defendant

Pettway's motion to suppress statements as a result of his allegedly illegal arrest (id., ¶23).

Unless otherwise ordered by Judge Skretny, any objections to this Report,

Recommendation and Order must be filed with the clerk of this court by January 5, 2015

(applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for

extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . .

waives any right to further judicial review of [this] decision".   Wesolek v. Canadair Ltd., 838 F.

2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale

Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: December 16, 2014                    /s/ Jeremiah J. McCarthy
                                            JEREMIAH J. MCCARTHY
                                            United States Magistrate Judge